IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ECO PRO PAINTING, LLC, )
)
)
Plaintiff, )
)
vs. ) Case No. 11 C 354
)
THE SHERWIN-WILLIAMS CO. )
and SWIMC, INC., )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Eco Pro Painting has sued The Sherwin Williams Company (Sherwin-Williams) and its wholly-owned subsidiary, SWIMC, Inc., for trademark infringement. SWIMC has moved to dismiss for lack of personal jurisdiction. For the reasons stated below, the Court grants SWIMC's motion.

## Facts

Eco Pro Painting is a painting service located in a Chicago suburb that markets itself as using environmentally-friendly paint products. Eco Pro Painting alleges that it has been using the name "Eco Pro" in its marketing materials since 2007.

In 2009, Sherwin-Williams, an Ohio corporation that sells paint and related products nationwide, applied for and received a federal trademark registration for the mark "Eco Pro" for paint applicators. Sherwin-Williams then assigned the rights to the trademark to SWIMC, a Delaware holding company with its principal place of business in Delaware. Pursuant to a license agreement, SWIMC licenses the trademark to

Sherwin-Williams on a non-exclusive basis for use nationwide. Sherwin-Williams has used the "Eco Pro" trademark in Illinois in connection with certain painting-related products.

Under the license agreement, SWIMC must approve all products bearing the Eco Pro trademark before they are released into the marketplace. Additionally, SWIMC may approve national advertisements and implement a variety of quality control policies, including personnel training and the right to inspect equipment, materials, and production facilities. The license agreement does not, however, grant SWIMC the right to exercise any control over Sherwin-Williams' sales activities. SWIMC retains the option, but not the obligation, to litigate any infringement case involving the trademark.

All of SWIMC's operations, assets, and officers are located in Delaware. SWIMC does not maintain any employees, offices, agents, bank accounts, or phone listings in Illinois, nor is it licensed to do business in Illinois. None of SWIMC's employees travels to Illinois for business, nor does SWIMC recruit any employees in Illinois.

On January 18, 2011, Eco Pro Painting sued Sherwin-Williams and SWIMC under the Lanham Act, 15 U.S.C. § 1125(a), and state law for trademark infringement and unfair competition. Eco Pro Painting contends that it has spent considerable time and money promoting and advertising its Eco Pro name and mark in Illinois and that it is irreparably harmed by the defendants' use of the Eco Pro mark.

## Discussion

A federal district court may exercise personal jurisdiction over a non-resident defendant to the extent permissible under the state law of the forum. Fed. R. Civ. P.

2

4(k)(1)(A).  Illinois' long-arm statute permits the exercise of personal jurisdiction if it would be allowed under the Illinois and United States Constitutions.  735 ILCS 5/2-209(c); *see Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).  The Seventh Circuit has held that there is no material difference between these two constitutional provisions, and thus the analysis of personal jurisdiction collapses into a single question, namely whether the exercise of jurisdiction comports with federal due process.  *Id.*; *see also Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

Federal due process allows a state to assert personal jurisdiction over a non-resident defendant if the defendant has had "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Only the defendant's own activity can make jurisdiction proper, "not the unilateral activity of the plaintiff or some other entity."  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003).  *See also Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").

In examining a defendant's contacts with the forum state, a court must determine whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections if its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  If a defendant has done so, then it should "reasonably anticipate being haled into court there."  *World-Wide Volkswagen*

*Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

If the plaintiff satisfies its initial burden of showing that the defendant "purposefully established minimum contacts with the forum State," then the court must determine whether the exercise of personal jurisdiction would offend "traditional notions of 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe*, 326 U.S. at 320).

There are two types of personal jurisdiction, general and specific. Eco Pro Painting does not contend that general personal jurisdiction exists in Illinois over SWIMC. Rather, it argues that this Court has specific jurisdiction over SWIMC. Specific jurisdiction exists when the cause of action "arise[s] out of or [is] related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984).

Eco Pro Painting contends that the Court may exercise personal jurisdiction over SWIMC because of its licensing activity and the rights it has under the trademark licensing agreement with Sherwin-Williams, and because it directed into Illinois correspondence concerning the alleged infringement. SWIMC argues that it lacks any meaningful contacts with Illinois and cannot exercise control over Sherwin-Williams' sales activities and thus that it is not subject to suit in Illinois.

If, as in this case, the issue of personal jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a *prima facie* showing that the defendant is subject to personal jurisdiction. *Tamburo*, 601 F.3d at 700. The Court accepts as true all uncontroverted allegations in the complaint and resolves in

favor of the plaintiff any factual disputes in the evidentiary material provided by the parties. *Id*.

**1.      Basing jurisdiction over SWIMC on Sherwin-Williams' Illinois contacts**

If corporate formalities are substantially observed and the parent company "does not exercise an unusually high degree of control over the subsidiary," a parent and a subsidiary are considered as two separate entities for purposes of personal jurisdiction. *Cent. States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000). As such, "the acts of one cannot be attributed to the other" for jurisdictional purposes. *Id. See also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) (jurisdiction over a parent company does not "automatically establish jurisdiction over a wholly-owned subsidiary").

The evidence in this case reflects that SWIMC and Sherwin-Williams maintain separate corporate identities and that both observe all corporate formalities, including having distinct corporate by-laws and regular board meetings. Sherwin-Williams does not control the daily activities of SWIMC, which has separate officers and directors. The Court concludes that the Sherwin-Williams' contacts with Illinois cannot appropriately be attributed to SWIMC.

**2.      The effect of the license agreement**

As indicated earlier, Eco Pro Painting contends that SWIMC's status as a licensor of the Eco Pro trademark makes the exercise of personal jurisdiction appropriate. The mere existence of a licensor-licensee relationship, without more, is "insufficient to impute the contacts of a licensee on the licensor for the purpose of

establishing personal jurisdiction." *Sinclair v. StudioCanal, S.A.*, 709 F. Supp. 2d 496, 510 n. 8 (E.D. La. 2010). As a general rule, personal jurisdiction does not exist over a licensor by virtue of its status if it does not exercise control over the licensee's sales activities and has no dealings with the licensee "beyond the receipt of royalty income." *Eragen Biosciences, Inc. v. Nucleic Acids Licensing, LLC*, 447 F. Supp. 2d 930, 938 (W.D. Wisc. 2006). A key factor in evaluating whether a licensor's status confers jurisdiction is the amount of control the licensor retains over the licensee. In *Meta/Balance, Inc. v. Health Ventures Partners*, No. 03 C 50497, 2004 WL 1345097 (N.D. Ill. June 14, 2004), for example, the defendant-licensor "retained little or no control over how [the mark] was used" and did not have the ability to regulate the licensee's operations or sales activities, and thus exercising personal jurisdiction over the licensor would not have been "fair, just, or reasonable." *Id*. at *2. *See also Camo-Clad, Inc. v. Latent Image, Inc.*, No. 00 C 278, 2000 WL 343324, at *3 (N.D. Ill. Mar. 31, 2000) (no personal jurisdiction over licensor because plaintiff failed to produce evidence that licensor had sufficient control over the licensee's activities).

The decisions addressing similar issues draw a distinction between a licensor's control over the licensee's sales activities and a licensor's control over the quality of the products entering the stream of commerce. A licensor may retain significant quality control over a licensee that engages in business in the forum state yet still lack sufficient minimum contacts with the forum state. In *Sunshine Kids Found. v. Sunshine Kids Juvenile Products, Inc.*, No. H-09-2496, 2009 WL 5170215 (S.D. Tex. Dec. 18, 2009), for example, the licensor retained little power beyond monitoring the quality of

products bearing the trademark. *Id*. at *7. The court noted that it could not find any case "in which a licensor's exercise of quality control over a licensee has been held sufficient to support the exercise of personal jurisdiction over a licensor who otherwise lacks contact with a forum state." *Id.*

SWIMC's license agreement with Sherwin-Williams does not allow SWIMC to exercise control over where Sherwin-Williams markets or sells any of the products bearing the trademark. SWIMC does not participate in the distribution of products and has no decision-making authority over its parent company with regards to sales activities. For these reasons, SWIMC's licensor relationship with Sherwin-Williams falls short of what is required in order to establish personal jurisdiction over a licensor based on its status.

3.  **SWIMC's approval of national advertisements**

SWIMC's involvement in approval of national advertising likewise does not support the exercise of personal jurisdiction. As a general rule, "national advertisements are insufficient to subject a defendant to jurisdiction in Illinois." *Hot Wax, Inc. v. Stone Soap Co*., No. 97 C 6878, 1999 WL 183776, at *4 (N.D. Ill. Mar. 25, 1999). *See also Seitz v. Envirotech Sys. Worldwide Inc*., 513 F. Supp. 2d 855, 864-65 (S.D. Tex. 2007). In any event, the terms of the license agreement suggest that SWIMC's rights in connection with Sherwin-Williams' national advertisements are in effect a type of quality control. As owner of the trademark, SWIMC has an interest in ensuring that the mark is represented to the public in a way that it finds acceptable. Without evidence that SWIMC deliberately directed such advertisements to Illinois, the

7

advertisements do not support a contention that SWIMC purposefully availed itself of the privilege of conducting activities in Illinois.

**4.      SWIMC's response to cease and desist demands**

Finally, the fact that SWIMC sent letters to Illinois responding to Eco Pro Painting's letters accusing it of infringement does not support the exercise of jurisdiction here.  SWIMC did not initiate this correspondence; it simply responded.  If a court could assert personal jurisdiction over a non-resident defendant based on its response to a cease-and-desist letter, it would be relatively simple for a resident of the forum state to manufacture jurisdiction.  Conversely, any incentive for the non-resident to settle the dispute amicably would be eliminated; non-residents would avoid responding to such letters for fear of being sued in a foreign jurisdiction.

**5.      The *Calder* effects test**

Eco Pro Painting argues that SWIMC purposely aimed tortious activity at Illinois, allowing the trademark to be used here even after it received cease-and-desist letters, with full knowledge that Eco Pro Painting would suffer harm here.

A court may exercise jurisdiction over a non-resident defendant that has engaged in tortuous conduct outside of the forum state that was intended to and does in fact cause injury within the forum state.  *Calder*, 465 U.S. at 790.  Tthe defendant's conduct must be (1) intentional, (2) expressly aimed at the forum state, and (3) committed with the knowledge that the effects would be felt – and the plaintiff would suffer harm – in the forum state.  *Tamburo*, 601 F.3d at 702.  In *Mobile Anesthesiologists*, the Seventh Circuit highlighted the importance of the "express

aiming" requirement of the three-part test and cautioned against exercising jurisdiction over defendants that merely cause "incidental and constitutionally irrelevant effects" on a plaintiff. *Mobile Anesthesiologists Chi.*, 623 F.3d at 445 n.1.

The sole act of licensing a trademark to an entity that is not based in Illinois does not, by itself, constitute "express aiming" under *Calder*. *See Sunshine Kids Found.*, 2009 WL 5170215, at *12 (plaintiff's attempt to employ the effects test absent evidence of express aiming "stretch[es] the . . . test beyond its existing limits to encompass essentially all licenses to allegedly infringing material, thereby subjecting virtually all licensors to personal jurisdiction in any forum in which one of their licensees did business"). Because the license agreement does not allow SWIMC to direct Sherwin-Williams' sales activities, one cannot say that SWIMC "expressly aimed" its conduct at the forum state – even if SWIMC reasonably could anticipate that products bearing the trademark would be sold in Illinois. *See, e.g., Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) (*Calder* "requires something more than mere foreseeability"). Additionally, the fact that SWIMC continued to license the trademark after receiving an infringement letter from Eco Pro Painting does not support jurisdiction. As the Seventh Circuit stated in *Mobile Anesthesiologists*, "to find express aiming based solely on the defendant's receipt of [an infringement] letter would make any defendant accused of an intentional tort subject to personal jurisdiction in the plaintiff's home state as soon as the defendant learns what the state is. *Calder* requires more." *Mobile Anesthesiologists Chi.,* 623 F.3d at 447. Failing to abandon the allegedly infringing trademark does not amount to a "[t]ortious act aimed at a target in the forum state and undertaken for the

express purpose of causing injury there." *Tamburo*, 601 F.3d at 707.

In sum, SWIMC could not have "reasonably anticipate[d] being haled into court" in Illinois. *World-Wide Volkswagen Corp.*, 444 U.S. at 297. Its 's contacts with Illinois do not satisfy the first part of the specific jurisdiction test, making it unnecessary to assess whether the exercise of jurisdiction would offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320.

## Conclusion

For the reasons stated above, the Court grants SWIMC's motion to dismiss for lack of personal jurisdiction [docket no. 20].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 10, 2011

10